We will miss you. Thank you. The first case is of the four that we have today is Greene v. Palakovich et al., number 07-2163, Ms. McGinty and Ms. Affronti. Good morning, judges. I'm Isabel McGinty, appearing on behalf of the appellant, Eric Greene. I am asking to reserve three minutes for rebuttal. Fine. Mr. Greene has been incarcerated since 1993. The events at issue here relate to Mr. Greene's conviction following from a robbery and a death, which occurred on December 11, 1993, in Philadelphia. I guess the first thing is, you know, the clearly established cutoff date. We need to somehow, as a court, and I guess among many other courts, come to grips with when is it? The date when Mr. Greene's conviction became final. What Supreme Court case so holds? Your Honor, we don't have a Supreme Court case so holding. We do have the recent case of Spisak, which the Respondents' Council had presented to the court in the appendix. But that didn't decide this issue either. No, it didn't. It acknowledged uncertainty, really, is what it did. It acknowledged uncertainty, but it went one step further. Now, the citation on this, it's recently decided. It's 130 Supreme Court 676. It was only decided on January 12, 2010. But what the court did in that case was, on deciding an issue relating to the weighing of mitigating factors in a death penalty case, where Mills was the precedent. And Mills was decided by the court after the matter had been presented to the courts below, but before the conviction became final. There was a much longer time span than we have presented in this case here. But what the Supreme Court set forth at the start of that case was, the parties, like the Court of Appeals, assumed that Mills set forth the pertinent Sure, that's all it did. That's all they did. They assumed that Mills was clearly established. So they didn't have to reach the issue we, I think, squarely had before us. The Supreme Court then applied a case, which existed at the time that the conviction became final, when the parties had conceded the point, but yet the Supreme Court did not have to. The Supreme Court could have said that Mills did not apply and apply a different law. But the bottom line here is they're saying, as Judge Smith has noted, there's uncertainty. And there clearly appears to be. I mean, in our circuit, I counted ten cases. It looked like six or seven go one way by saying the date of the last relevant state court decision. Three or four go the final, your way. And then I look at other circuits, and it looks like the majority of the circuits say final, but it's just not too far behind. Circuits say that it's the date of the last relevant decision. We've had cases coming out almost on the same day, written by the same judge, doing just the opposite. I mean, it's like, whoa. So what is the argument for why it is that it should be in this case, which is, I think, fairly critical to you, why it should be the date the decision becomes final? Because, Your Honors, there is a split in which dates have been applied. But courts have applied the date when the conviction became final. And I am also raising before the Court to consider that because of what the Supreme Court did in Spisak, the Supreme Court noted that there may be circumstances, in fact, it may even be all circumstances, when that is the important date. But I'm also raising to the Court a second very important argument, that that issue has to do with whether Gray applies in this case. My argument is also that Gray, on the facts presented here, flowed directly from Bruton. That Gray was not... How can you make that argument when you have, as you do, the footnote in Marsh that leaves open the question, expressly leaves open the question? That's not suggesting one direction or the other. How does it flow directly then? In answer to that, Your Honor, I go directly back to Bruton, where the Court there relied on three distinct factors. It was the powerfully incriminating nature of the statement itself, not necessarily directly related to the revelation of the name, but instead the powerfully incriminating nature. The lack of opportunity for cross-examination... Are you saying that the fact that the defendant was explicitly named in Bruton wasn't critical to the Bruton decision? I'm not saying it wasn't critical. I mean, that's what Richardson made pretty clear. Well, but Richardson is different on its facts. And Richardson was... Well, all cases are different on its facts, but the point is that Bruton, there was specific naming, right? Yes. And Richardson, there wasn't. So Richardson said it has to be directly involved with respect to the defendant who's now on appeal. And so it would seem that you really need Gray to help you. And Justice Scalia, in his Richardson v. Marsh opinion, emphasizes that Bruton is a narrow exception. He says that several times, doesn't he? Yes, Your Honor, he does say that. But I'm arguing to the Court here that the facts presented here fit within such narrow exceptions, and it's because you have to look specifically at the facts of this case and the way that those co-defendant statements were used within this case, the way that the jury was not fully instructed as to how those statements could be used, and also the way that those statements were used then to buttress the testimony of Jackson. But to say that Gray flows in some natural or ineluctable way from Bruton and from Bruton and Richardson v. Marsh, doesn't there have to be some similarity between what occurred in Gray and the facts as you relied upon them in telling us that there was a factual distinction in Richardson v. Marsh, in Bruton as well? How can you compare Gray to either of those where Gray was talking about, it seems to me, what we have here, a deletion, a blank, and Bruton, which involved explicit naming in the redaction of those names, and Richardson v. Marsh where you have the linkage of something the prosecutor says to the statement that Marsh herself made while she was on the stand? How is there any kind of line there, a consistent line through those three cases? Because I come back to the question of, if Gray did not exist, would I have this argument to make before the court? And yes, I would be coming before the court making this same argument. Now, Gray, to a certain extent— You would have the argument, but it would be pretty attenuated. I mean, my perception is you really need Gray. And therefore, in order to get Gray, you have to have us conclude that the finality is the test that we should use for when a Supreme Court decision is clearly established. And my best argument in that is that clearly there is a split within the circuits. Forget the split. What does the statute say? What does the text of the statute say that helps you in any way to rely upon the later date of finality as opposed to the date of the decision? Here is the decision of the Superior Court. Well, under AEDBA, a federal court can reach a contrary decision only if the state court decision was contrary to or involved in an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. I'm going back to 2254d.1. I'm taking then on the application of that, that what was the clearly established federal law as then interpreted by the United States Supreme Court and as the Williams case makes clear, that there is an opening allowed by the Supreme Court that it's the date that the decision became final, which gives me the 1999 date. How can a decision that hasn't yet been rendered be contrary to Supreme Court precedent? That doesn't make any sense to me logically or linguistically. The statute requires a decision that was contrary to Supreme Court holdings. And in Speech Act, that did not deter the court. But you're not answering the question. The question is when you look at the statutory language, just as Judge Smith is correctly focusing our attention, it refers to a decision that's already been rendered because if it hasn't already been rendered, you can't tell if it's in conflict with Supreme Court case law. So it seems to me the statutory language strongly suggests that the operative date in our case here is the date of the Superior Court decision, which precedes Gray, and then you're in trouble. So I don't understand what your answer is. Well, the answer comes in under Teague, this type of situation. But Congress acted after Teague to institute a new regime, which looks to me to be different because it keys on a decision actually rendered, whereas Teague had a different approach. And the point is that we don't even have to do any retroactivity analysis if the time we pick for the clearly established is the final decision. So to get into a Teague analysis would be a major hurdle for you to have to overcome, and I doubt very much that you could, but you don't get there if you can show that we apply Gray because we would choose final decision for clearly established law as opposed to the date of the last relevant state court decision. Well, my argument is that there is an opening there. There's a gap in the law. It is not clearly settled on this. It ain't no bout of doubt that there's a gap in the law. There is a gap in the law, but I come back to Spisak because the court there applied precedent that predated, or rather that was not in effect at the time of the final decision in the case, and also the precedent that came into effect after the jury trial. So it wasn't even precedent that the trial court could have been aware of, that the Supreme Court is well aware of. Was there an appeal in that case? Direct appeal? Yes, I believe there was. So then the operative decision would have been the appellate decision, not the trial decision. Yes. Yes, Your Honor. But still, would the trial court have been on notice of this? Because one of the issues that is raised in all these circumstances. Isn't Justice O'Connor, when she refers to relevant decision, talking about the last actual decision in the chain? If there's no appeal, it's the trial court decision. Yes. If there's an intermediate court of appeals decision, but not a Supreme Court decision, then it's the intermediate appeals court decision. If in Pennsylvania, aliquotter is granted, and the Supreme Court decides the merits, then the Supreme Court decision is the relevant decision. So it's just the last decision on the merits. Yes, Your Honor. Doesn't that mean that in your case, Gray doesn't apply because the last decision on the merits was the Superior Court decision that preceded Gray? By about two years. No, Your Honor. I'm arguing that it's the date that the conviction became final. We understand you're arguing that, and we understand the basis, but the logic of it is not so clear. I mean, the best case you've got going for you, obviously, of the circuits that have really tackled this, you've got Howland on the Eleventh Circuit, which goes against you, and you've got Foxworth on the First Circuit, which goes in your favor. So isn't Foxworth the one you should be arguing? Yes, Your Honor. Well, beyond that, or in addition to that, because I'm not sure I got an answer to my question, I think you pivoted away from it fairly quickly, or maybe I just missed it. Finally for me, can you tell me what in the text of 2254 D.1, aside from the decisional law and the problems with the Supreme Court's jurisprudence, favors the position you are taking? With its language of adjudicated and resulted in a decision, what in the text can you muster to favor your decision, your position? I confess I don't have the text directly in front of me right at this moment, but I would say that it's the decision, it's the ambiguity as to when the decision is rendered, which allows me then to argue and which has allowed other things. What's the ambiguity about a date certain at which point the Superior Court affirmed the conviction and direct appeal? What's ambiguous about that? Your Honor, the date certain, which I am going to, is the July 29, 1999 date when Mr. Green's conviction became final. Got it. Thank you. We'll get you back on rebuttal. Thank you. Ms. Affronti. Counsel, just to understand the frame of reference here. We needed just to have her introduce herself. Sorry. May it please the Court, my name is Susan Affronti. I'm counsel for the Appellees in this matter. All right, thank you. Judge Michel. Sorry to jump the gun. No problem. I just want to be sure I understand your underlying position here. Do you agree that if Gray does apply, this conviction has to be overturned? No. I would say if Gray does apply, then we must go into a Brecht error analysis. And we do immediately go to a Brecht error analysis if Gray applies. I would argue that under Brecht we do still win. I was about to ask that follow-up. I'd be very interested to hear how you prevail. Okay. But before you get to that, just as a matter of housekeeping, are you seriously contending that Green does not satisfy the fair presentation requirement? Because I think that appears at some point in your brief. Is that a serious contention? It is, Your Honor. I'm going to say right up front it's not our best argument. That's as much of a concession as I think I need. But I think it's a good argument. There is a requirement of fair presentation. And when you have a change of law, significant change of law like Gray, which we've all been talking about, was a massive change of precedent, especially for Pennsylvania and Maryland who used this blank system. It's very important that this claim is presented. But the Superior Court specifically addressed the sufficiency of the redaction. They did. And they addressed the Bruton violation front and center. They did.  They did, though, Your Honor. They looked beyond the brief. If you look at the brief, they saw the brief itself talks not even a little about the method of redaction. It talks only about severance. Severance was the issue from day one before the trial court. I understand. The Court of Appeals or any appellate court is not bound by waiver. Only parties are bound by waiver. Exactly. I think that because the Superior Court reached out and went further than they needed to, that's what weakens our argument, ironically, on fair presentation. But I would say that if this court is seriously going to look at the Gray issue, then fair presentation becomes far more important than the Superior Court realized at the time. They had no idea, obviously, that Gray was going to change the law the way it did. And, therefore, it becomes tremendously important that there's no mention of these blanks at all, either by the Superior Court or by the defendant who doesn't mention the method of redaction at all. Perhaps the Superior Court could have talked about it. Perhaps the Superior Court might have reached out and gone to a Chapman harmless error statement. How are you asking us to read the Superior Court opinion as if it did not contain what it does contain? I would say that when you look at fair presentation, you look at the briefs. You don't look at the opinion. When you look at something like a default in an independent and adequate context, certainly, the first thing you look at is the Superior Court. But you can't be saying that the Superior Court lacked jurisdiction to decide and say what it did. No, and we're not saying that. And the request for allocator to the Pennsylvania Supreme Court noted this, did it not? No, it did not. It wasn't until the Pennsylvania Supreme Court reached out to the defendant after Gray and said you should brief Gray and granted aliquotter that briefing happened subsequently at that point. So it decided it was going to take it before it dismissed it later on. In fairness, didn't defense counsel before the court of common pleas argue severance hand in hand, explicitly based upon the effect of this unredacted statement? The two issues were inextricably intertwined to invoke that overused term, were they not? They were. Yeah, indeed. Doesn't that undermine your position dramatically in the fair presentation issue? I read that transcript before the common pleas court judge. I believe it was Judge Temin. Yes, I think initially before Judge Temin at that stage, yes. And there was no question that severance was what was being argued as a legal request and issue, but it was because of the fact that one co-defendant was looking at the death penalty and because you had these statements. And I would say that you need to look at the way it's being argued. The death penalty issue is separate. I mean, it really is. The question there was not about the statement, but merely that it was going to change the jury selection process, and they felt that was unfair. That was argued. That's just very different than what we have here. Mr. Moldavsky, who I think was attorney at that stage for the petitioner, explicitly complained about the nature and clearly the suggested nature of these unredacted statements. He made what I would describe as a Richardson v. Marsh argument, a contextual implication argument, a they're going to know, so therefore nothing you can do can change this. Isn't that game set and match in terms of fair presentation? That's game set and match in terms of fair presentation for Richardson, but this is not a Richardson argument as we've been discussing. This is a Gray argument. This is about how you redact with the blanks and with the use of the other guy. But now you do have Gray, and then the question becomes, when should we peg that something is clearly established? As I said before, cases are literally all over the lot, usually dicta, but you've got the First Circuit case, which has taken it head on. And the concern that the First Circuit has, among other things, is that there's a policy argument that would be you could insulate yourself by just doing summary affirmances at the state court level, and consequently you go back in time to when you have, if it's the relevant state court decision. Why shouldn't it be finality? I mean, there would be a hole here left if you don't have a finality involved. I mean, that's when Ed kicks in, right, when you have finality? Well, I don't think that, let me put it this way. I agree with you first and foremost. The case on the circuits is all over the place. I would point out that the Supreme Court opinions aren't actually, the Supreme Court opinion is. Would you say it is the appeals court decisions within this circuit too are all over the place? Also, yes. There is a footnote in the magistrate judge's report and recommendation to suggest that we have less than ideal consistency in our own jurisprudence. I think that's true throughout the circuits in the country, Your Honor, but yes, here is no exception. I think it may be a product of what language is used by the appellants and appellees. People use parodying languages without thinking because it's dicta, because it's not the issue. But I would point to the United States Supreme Court cases, and I would ask would they repeat language? What about the text? What about the text of the statute that is front and center in this case? Well, I think that the text of the statute would favor us as well. Tell me how. Unreasonable application of United States Supreme Court precedent. Unreasonable application is looking at that opinion, and I would say to paraphrase, and probably badly, Justice Sotomayor in that Smith argument, how can a court act? How can you say it was unreasonable to anticipate this massive change of the law? It simply is not unreasonable for the Superior Court of Pennsylvania to have ruled based on the United States Supreme Court precedent. What do you get out of the footnote in Richardson v. Marsh? I think the footnote in Richardson v. Marsh tells us that you absolutely have to have gray as the precedent you look at for this to go the defendant's way. Let's assume for the moment that we decide that we can apply gray and, in effect, we would choose the clearly established law to be when it's final, that is, when the Supreme Court did not act in effect. In that context, do we remand or do we decide on the merits? Your Honor, I think it's up to you. This has not been briefed in any depth below, and because of the other issues in this case, it hasn't been briefed in that much detail even yet. The district court and the magistrate judge didn't reach it because they reached the point of law instead. It can be remanded. It could also be argued here. You have the record in full before you, and I'm happy to discuss it with you if you'd like to discuss it now. Counsel, before you go on to another point, I understood opposing counsel to say that Teague remains good law as against the theory that Congress partially overruled Teague. Now, is there any legislative history in the passage of this statutory language we're discussing that sheds light on the extent to which Congress might have wanted to alter what I'll call the Teague regime? I have not seen any reference to legislative history. I will not say there isn't. To be honest, I didn't look specifically at the history. But you're not depending on any. You didn't find any. I did not find any, and I don't recall. I read a number of cases throughout the country when I researched this, and I don't recall reference to the legislative history. I would simply point to O'Connor's language in Williams, which she clearly gave a lot of thought to, and she does specifically say that Teague is not what they're talking about. The confusion that arises from Williams comes from the language at the beginning of Part III, I believe it is, where Justice Stevens talks about – Part III was adopted by the majority. It was. Written by Stevens. Part II was adopted by the majority, written by Justice O'Connor, right? Right, and hence our confusion. Hence our confusion. Justice O'Connor talks at length and specifically disagrees with Justice Stevens' Section 2, which adopted formally what we're talking about here. Justice Stevens, in the dissent, said, when we look at the AEDPA, we just follow Teague. Whatever is the finality date, and he went through that whole analysis, this whole finality analysis. And then O'Connor, in the majority opinion, says no. Teague is not what we're talking about here. Teague is a separate issue. And what she says is it's clearly established federal law at the time of the relevant state court opinion. We heard a lot from Ms. McGinty about BSAC, and it is, of course, almost hot off the presses. What about subsequent pronouncements of the Supreme Court, subsequent to Williams, on the language of Williams or what was done by the Supreme Court with that language? What about Lockyer? What about Yarborough? What can we make of what the Supreme Court did with language from Williams in those opinions? Well, I would say the Supreme Court is not commonly in the habit of using language loosely, and they have consistently repeated O'Connor's language. The only time Stevens' language is used is when we're truly talking about a Teague analysis. And the Supreme Court's been quite clear. That's just a separate analysis. And yet BSAC says there's uncertainty. They do. I mean, there is, Your Honor. They have never hit it directly on point. They keep repeating the dicta over and over again. But they're repeating it in dicta, and it is dicta. Now, in a case where there's not dicta, the First Circuit case in Foxworth, how do you respond to the arguments made there by the rationale of the court? I would simply say that I disagree. I think that the language of the statute very clearly talks about the opinion and deference to the opinion, and saying that it's an unreasonable application of United States Supreme Court precedent requires us to look at that precedent at the time the opinion is rendered. I think it actually is akin to the fair presentation requirement, and that talks about the law, and it talks about the facts. That law had to have been before the court, and the Superior Court of Pennsylvania didn't have gray, and it's truly... But Foxworth talks about... It has basically two arguments. It goes back, and it refers to a case that we haven't talked about, Griffith v. Kentucky back in 1987, which came out shortly after, right around the time of Richardson, and it said the recognition that you do deal with finality in order to have clearly established precedent. This recognition is fully consistent with Part 3 of Justice Stevens' lead opinion, joined by Justice O'Connor. And Justice Stevens stated that the threshold question under AEDPA is whether the petitioner seeks to apply a rule of law that was clearly established at the time his state court conviction became final. Griffith removes any vestige of doubt. We have read that decision as establishing that, quote, if a conviction is not yet final when the Supreme Court announces a rule, then inferior courts must apply that rule to the defendant's case. And so they choose finality, and then they go on in saying, we add a coda. While this result is dictated by precedent, and no one could argue with that, it also makes good sense from a policy standpoint. The construct advocated by the respondent would allow a state court to subvert Griffith and deny criminal defendants the benefit of new Supreme Court precedent by the simple expedient of summarily affirming a lower court's decision. And that's the whole I'm talking about, which is, this case is right in that hole. You have 96, last relevant state court decision, and then 99, it becomes final, and in the middle in 98, you have gray. And I will concede that I think they need gray in order to help their case. So what are we supposed to do? Can I hit both points quickly? Absolutely. I see my time is running very short. You're on our time, don't worry. As to the first point I think was that finality is consistent with part three of Stephen's opinion, is that right? I would say that actually there's two ways to read Stephen's opinion. I think I made this point in my brief, if I'm remembering right. Teague is always a threshold question. Always is. And when he says, Stephen's, I think this is direct quote, the threshold question is whether Williams seeks to apply a rule of law. That was clearly established at the time his state court opinion became final. It's entirely possible that O'Connor was joining Stephen's by simply agreeing the threshold question is that. The threshold question being Teague. That's just the threshold question. It's not the standard of review. It's just the threshold question. Because if Teague tells us that gray didn't apply, if gray came out after finality, then this whole thing goes away. So I would actually say that you can read Stephen's language so that it's not inconsistent with O'Connor's very clear decision in part two where she says Teague is not the standard of review. I'm just saying that's a way to read it. There are some circuits that have gone that way. Other circuits, obviously the first, who have disagreed with that analysis. So that would be point one. As to point two and the subversion, I would simply say I really question how big of a risk that is. Well, in this case it is. I mean, this is that case. Yes, if we were to suggest that the Pennsylvania Supreme Court was subverting. I think that... Well, on that question, do you know of any cases specifically or any suggestions from elsewhere that state appellate courts or intermediate appellate courts have done just that? Have subverted? Subverted or sought to subvert through some kind of summary affirmance. Well, as a... That's a softball. I mean, I don't think so. Some kind of pestilence on the judicial landscape out there that needs to be stamped out. Right. It strikes me as just a very harsh criticism of the state courts that, in my experience, has been quite unfounded. But is it still the custom of the Superior Court to regularly affirm without opinion? No. The Superior Court? Superior Court. The Superior Court almost always writes a memorandum opinion. In my experience, I have never seen an instance. And perhaps, I mean, perhaps that issue is... That second point is best looked at in a case where you have such a subversion. Perhaps if you had that argument, that it was purposeful, there was malicious action, maybe there could be grounds to use a different rule in that circumstance or to read the state court's opinion in a different way. But this was a case where things went the way they normally go. They went in the normal course. The Pennsylvania Superior Court issued a memorandum opinion. The Pennsylvania Supreme Court... I would not call what the Pennsylvania Supreme Court did in the normal course of my experience as an old state court judge. That was a bit unusual in the grant of Alicotter and then the dismissal of the Alicotter. That was not in the ordinary course, but I don't think that hurts you in this case in any material way. No, but the Pennsylvania Superior Court issued an opinion and the Pennsylvania Supreme Court did not... There's no indication there's subversion here, and I think that would be... What Judge Shelley is talking about is going forward. Right. Nobody's saying that it happened in the past, but it's a great way to cause a person to lose a possible argument on Supreme Court... Especially where it's quite likely that the person is going to lose on the retroactivity analysis of case. I would merely state in response that I think the appellate courts in Pennsylvania are in the business of rendering appeals and rendering opinions and not subverting subsequent habeas action. So I think that would be an unfair concern. As part of your argument, to the extent it depends on what I'll call policy, that there could be a lengthy period where a conviction isn't final. Suppose you have a case where the Superior Court has affirmed a criminal conviction and the Pennsylvania Supreme Court has pending the petition before it, let's say for a year. And then let's say it finally grants aliquot or takes another year, decides the case. Cert petitions filed in the US Supreme Court and the Supreme Court has it penned there for a year. So now you're talking about three or four years, perhaps, of hiatus between what looks like the end of the case and the actual definition of finality. So in that intervening three or four years, there could be some significant changes in the law. Is that part of your argument or not? Well, I wouldn't dispute that there can be a period of time, it can be lengthy, and there can be a change in the law. But does that support your argument or is that just not relevant? That's for law professors to write about, not judges to decide or worry about. I think that's an excellent way to put it. It's simply not relevant here. I would also point out that there is a collateral appeal. She doesn't like law professors. Let the record reflect. I would simply point out that there is collateral appeal in Pennsylvania, and if they wanted to really duke this out and try to demonstrate that there was some subversion or that the delay rendered things unfair, they could do that in collateral appeal. As I did point to a case, Anthony Washington, where that's exactly what happened. Thank you very much. Ms. McGinty. I would like to comment, Your Honor, just briefly on the fair presentation argument because the respondent's brief does go into some length about there was not presentation of the issue. And I do want to emphasize to the Court, because this does go to, was the issue properly presented before the courts below? And on this, I would refer back to the lead-in language of 2254 in answer to Judge Smith's question on whether the claim was adjudicated on the merits of the state court proceedings. And I would note in this particular case that from the very, very beginnings of this case, the issue that's presently before the court was brought before the trial court, was brought before... That was not a question on my part. That was a declaration of fact. There's no doubt about it. You should perceive you're on pretty solid footing there. I think I would go to the question of what do we do, what do we determine now that it's before us as to when something is clearly established? Your Honor, as presented in this case, you do have a matter where there's a critical issue which is raised here by the appellant. And it was raised throughout the proceedings in his criminal case. It's not through his fault that the Supreme Court did not address this issue. He tried. He could not get that final review. Meanwhile, the case then went on to the finality of the conviction, which was in July of 1999. And leading up to that, Gray was decided in the meantime. That was March of 98. The issue was the same as this defendant was presenting it throughout. And it fell directly within Bruton, I argue, but also Gray. And while before the Supreme Court, his counsel does argue Gray, the law that attaches to Gray, that was presented to the courts throughout this proceeding. Counsel, how is it that you're not asking us to improve on the handiwork of Congress? Because it seems to me that you're asking us to read the critical language in the statute as if it said, an adjudication that resulted in a decision, and this is the language you're asking us to add, which decision has not yet become final, comma, and then the rest of the language in the statute that was contrary to Supreme Court case law and so forth. That might be, that would be a better statute, but that isn't the statute that Congress wrote. And if it's fair to say that you're asking us to add words of qualification that aren't in there, that's a lot to ask. Clearly, Your Honor, I'm not. How is it that you're not? Because the language just says, resulted in a decision that was contrary. And it doesn't say anything about whether the decision is final or not. So in effect, you're asking us to add that as a qualifier when there's no language in there to support such a qualifier. Well, no, I'm not. Your Honor, instead, what I'm asking you to do is what some other courts presented with this same situation have found that they can do. And that is to apply gray here and to apply the law as of the time that the conviction became final. And also to find that 22... Yeah, but where is there any language in the statute that's written that refers to finality explicitly or even indirectly? There's no linguistic hook that I can find in here that you can hang your argument on. My argument comes right out of 2254d, the language that, with respect to any claim that was adjudicated on the merits in state court proceedings. Adjudicated? That's an active verb. I understand. I understand, Your Honor. But my argument is that this claim was presented over time to the state courts. They did have the opportunity for adjudication. And also... It certainly wasn't... You say state courts? Yes, Your Honor. It certainly wasn't presented in the court of common pleas where Mr. Moldavsky thought that the redaction proposed by Judge Temin was brilliant. But, Your Honor... That was his compliment to the judge. But, Your Honor, if you read further, in that same sequence, what's under discussion is if Finney's statement would be redacted to say person number one was the one who did it, Womack's, no, no, it was person number two, and then Jackson, the testifying cooperator, that if he was allowed then to say no, instead it was person number three. There's a specific sequence that would then have exculpated, potentially, Mr. Green. So, no, in that sense, that might indeed have helped Mr. Green at trial. That was not what the court below then did. And instead, by the redactions that were used by that court, it instead pointed the fingers of all three directly at Mr. Green. So, in that sense, you didn't even need the name. That's what brings it under discussion. How was the finger ever pointed directly at Mr. Green, given the number of parties there were here? Your Honor, I discussed this at some length within my brief. It's longer in the explanation, and that's why I'm referring to that. It was your reference just a few seconds ago that the finger was pointed at Mr. Green. Because you had five defendants, two of whom remained in the car, three of whom went into the store, or four of whom went into the store. There was the identification of Mr. Green during the trial as the person who had carried out the cash register, and the other person of note, of particular note within the store, was the person who pulled the trigger. The shooter. By the redactions then that were allowed by the court, it identified that there were five people. In the course of the trial, there were the identifications of what were the placements of those persons within the car or within the store, and there was then the backup verification that it was Green who had carried out the cash register. So in the course of the trial, you didn't need the names. That was Jackson's testimony? His changed testimony from the original statement he gave? Yes, Your Honor, but it was then brought home by the prosecutor in the prosecutor's closing statement, by the statements of the prosecutor, and it was also brought home by some of the other co-defendants' counsels. And in the manner of redaction of the statements, though, the jury sitting there had less ambiguity than they would have had had they heard the unredacted versions because there were additional names that were in the original statements. The relevance of all this is that you win even under Richardson? Is that what you're saying? No, Your Honor, I'm not arguing Richardson, but... I mean, I think you have a real problem saying that even if we were to say that we can entertain this, or if we deal just with Bruton and Richardson, that you can say that it was clearly established that a redaction in this case helps you. I mean, you really need Gray. I will concede, yes, I need Gray. But I also have to concede that it may be that the court will not give me Gray. And I ask the court to look again. And Bruton leads to the same result. And the Richardson footnote, though problematic, is a later interpretation of Bruton. Bruton, because of the standards set by the court, because of the clearly inculpatory nature of the statements, and because it can't be cured by an instruction to remedy the harm and the prejudice that results in the defendant before the jury, Bruton then requires that some relief be given to the defendant. Here, Your Honors, I ask the court to look again at my analysis of what exactly happened to those statements, the way they were redacted. Because by those redactions, it was the same as if the names of those five defendants sitting at the defense table had been put into those statements. There was no other implication left to the jurors. It was as if Green had been named. But that sounds like you're saying the Supreme Court could have extended Richardson further, and if it did, it would cover my case, but it didn't, in my perception, until Gray. And so I have a hard time seeing how anything other than Gray helps you. Bruton deals with the non-testimony. And the point is, you're arguing by extrapolation, but the point is, if you take the date of the state court decisions being when you had the adjudication on the merits, then in 96, when that state court decision came down, it wasn't clearly established that Gray was going to be the law. No one knew in 96. None of us knew, including the Supreme Court, until 98. So you're really marching up San Juan Hill if you don't have Gray. Unless I can get the court to look again at Bruton, to where this fits within the language of Bruton. But you got Bruton with the gloss of Richardson, and that's the problem. But there's also the distinction between the two of where you have the testifying and the non-testifying co-defendant, and that as a distinction. And the language of Richardson, which says Bruton, is a narrow exception and places considerable emphasis upon the use and the role of a cautionary instruction. And you need a direct nexus, a direct tying, a la Bruton. And if any of us were back 14 years ago in 96, we would not guess that you would win on this necessarily. You need something else. That something else happens to be the fortuitous decision of Gray that at least gets you in the ballpark of being able to make this argument in a strong way. I ask the court, respectfully, to look again at the statements themselves and the analysis of why those statements identified this defendant. That's if we get to the merits. Yes, Your Honor. Okay. Thank you very much. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement. We'll call our next case.